**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:13-CR-109-01** |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| **MARIA COLVARD** | : | |

**MEMORANDUM**

Presently before the court in the above-captioned matter is the motion (Doc. 143) to withdraw guilty plea filed by defendant Maria Colvard ("Colvard") on January 22, 2015, wherein Colvard seeks to withdraw the plea of guilty she entered on January 6, 2015. For the reasons that follow, the court will grant the motion.

**I.      Factual Background & Procedural History**

Colvard was initially indicted (Doc. 23) on June 5, 2013 on two counts: (1) extortion by a person representing herself to be an officer of the United States, in violation of 18 U.S.C. §§ 2, 872 (Count I), and (2) false personation of an employee of the United States, in violation of 18 U.S.C. § 912 (Count II). A superseding indictment (Doc. 74) followed on November 6, 2013, which additionally charged Colvard with a count of interference with commerce by threats, in violation of 18 U.S.C. § 1951 ("Hobbs Act") (Count III). On January 15, 2014, the government filed a second superseding indictment (Doc. 83) against Colvard, adding two counts of tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1) (Counts IV and V). Colvard appeared before a magistrate judge on January 14, 2014 and entered a plea of not guilty. (Doc. 92).

On January 6, 2015, Colvard entered a plea of guilty (Doc. 140) to Counts II and III of the second superseding indictment, pursuant to a plea agreement (Doc. 137) with the government. The plea agreement provides for dismissal of the remaining counts of the second superseding indictment at the time of sentencing. (Id. ¶ 1). The agreement also notes that Count II carries a maximum sentence of imprisonment of three years and that Count III carries a maximum sentence of imprisonment of twenty years. (Id.) Additionally, it "specifically reserves the right [of the government] to recommend a sentence up to and including the maximum sentence of imprisonment," but requires the government "to recommend that any sentence of imprisonment for Counts II and III be concurrent." (Id. ¶ 11). The agreement states that "any legal and factual issues relating to the application of the Federal Sentencing Guidelines to the defendant's conduct, including facts to support any specific offense characteristic or other enhancement or adjustment and the appropriate sentence within the statutory maximums provided for by law, will be determined by the court after briefing, a pre-sentence hearing, and/or a sentencing hearing." (Id. ¶ 9).

At the plea hearing, the court conducted a lengthy colloquy with Colvard to assess the voluntariness of her plea. (See Doc. 146). During the discourse, the government outlined the terms of the plea agreement, and Colvard verified their accuracy. (Id. at 9:17-19). Thereafter, the court specifically asked Colvard, "Do you understand that no one can guarantee . . . what sentence you will get from me?" (Id. at 10:3-4). She answered in the affirmative. (Id. at 10:5). Colvard confirmed her understanding that the combined statutory maximum term of imprisonment for

Counts II and III is twenty-three years. Although she would have the opportunity to contest the probation officer's later calculation of the appropriate guidelines range prior to her sentencing, Colvard acknowledged that she would be precluded from withdrawing her guilty plea if she disagreed with the court's ultimate guidelines determination. (Id. at 11:10-16; 12:15-13:2).

After an extensive colloquy regarding Colvard's appellate waiver, the court continued with its inquiry, asking, "Are you pleading guilty because you are in fact guilty as charged in Counts II and III of the [second] superseding indictment?" (Id. at 15:20-21). Colvard responded in the affirmative. (Id. at 15:22). Yet, when she was faced with the factual admissions essential to establish various elements of the offenses, Colvard balked. In the court's view, the seemingly knowing and voluntary nature of the plea colloquy unraveled after the government stated the factual basis for the plea agreement.

The government proffered the facts on the record. It described an elaborate scheme wherein Colvard and an employee of her tax preparation business, Merarys Paulino ("Paulino"), conspired to obtain financial records and client information from a former employee, Cristina Gutierrez ("Gutierrez"), by impersonating an officer of the Internal Revenue Service ("IRS"). (Id. at 17:1-20:25). Immediately thereafter, Colvard conferred off the record with counsel, Attorney John Reed ("Attorney Reed"), for approximately four minutes. (Id. at 21:10-11). Attorney Reed then indicated to the court that Colvard requested permission "to state her position with respect to some of these things." (Id. at 21:18-19). Her request prompted the following exchange:

3

Court:  Ms. Colvard, do you fully admit to the facts that have been placed on the record by the Assistant United States Attorney?

Colvard:  Do I fully admit to the facts he stated?

Court:  Yes.

Colvard:  No, I found the various facts –

Court:  Then tell me what you admit to and what you do not admit to.

Colvard:  Okay.  There were many.  However, I admit to being aware of Ms. Paulino attending the, or presenting herself as the . . . IRS agent. . . . I was aware that Ms. Gutierrez was violating my do not compete agreement, and I presented myself and I, you know, provided her with a letter stating that she either cease and desist or . . . abide by the contract, which she was not to compete with my office within fifty miles . . . within three years I think of the original signed contract . . . .
 So I felt I was within my rights to do that.  Now, I understand Ms. Paulino presented herself, and I was not aware of everything that was stated, and it's not an attempt to, you know, dislodge myself from any responsibility, but, you know, just stating that I demanded money, that's –

Court:  I'm sorry, I need to interrupt you for a second, Ms. Colvard.  It's necessary, in order for me to make sure that this is a voluntary plea on your part . . . that you are admitting to the facts that form the essential elements of the charges that have been file[d] against you.  Now, so far you haven't admitted to the essential elements of these statutory violations . . . . All you've said is that you were aware that Ms. Paulino was doing this . . . and all you've indicated is you thought it was within your rights to advise Ms. Gutierrez that she was in violation of the non-compete agreement.
 Now, in order for me to accept your guilty plea it's necessary for me to establish for the record a factual basis for that plea.  Mr. Bloom has placed on the record facts that would provide a sufficient basis for the plea to these two counts.  Tell me what you admit to that forms the basis for the two charges against you and I'll determine whether or not I think that this plea has an independent basis in fact. . . .

Colvard:  I admit to having, being involved in the impersonation of the IRS agent.

4

Court: So you were not only aware, but you were involved in the impersonation of an IRS agent for purposes of intimidating Ms. Gutierrez?

(Brief pause.)

Colvard: Intimidating is not a word that I would use, Your Honor.

Court: Mr. Bloom, maybe you can help us out. Let's get to the very basics of the essential elements of these two statutory offenses. If we cannot, then I'm not going to accept this guilty plea.

Attorney Bloom: Certainly, Your Honor. Your Honor, in terms of the second count, the 912, it would require . . . falsely assuming or pretending to be an IRS agent, I think we have the first part, but the second part [] that would need to be met is that she did so in order to obtain any money, paper, document, or anything of value. The thing of value certainly could be the client list.

. . .

Court: Now, do you admit to that Ms. Colvard? Do you admit that you were attempting to acquire something of value to you?

Colvard: I admit.

Court: . . . And what was the thing of value specifically? The client list? . . .

Colvard: Yes.

. . .

Attorney Bloom: [For the second statutory violation, interference with commerce by threats,] th[e] threat would be the threat to shut down the business and regarding the $10,000 fine as indicated . . . .

Court: All of which would be in connection with the impersonation of the IRS agent.

Attorney Bloom: Correct, Your Honor.

Court: Alright. Ms. Colvard, do you understand the allegation and the facts that the government suggests it would present in support of . . . that specific charge?

5

Colvard: The way it was stated, yes, I agree to it.

Court: Well, do you admit that the nature of this impersonation that you were involved with, the impersonation of an IRS agent, that the effort was made by intimidation . . . to stop [the business] from operating in your vicinity by the threats raised by Ms. Paulino.

Colvard: I understand that the threats, yes, but that was not my intention.

. . .

Colvard: Honestly the only thing I wanted to know was if she was using my technology and my EFIN. That's all I wanted to know. And through the actions that transpired the rest of it evolved into, you know, Ms. Paulino making demands that I was not aware of, but I know that they happened.

. . . (Discussion off the record.)

Court: Let's go back on the record. As I stated to counsel while we were off the record, Section 1951 states as follows, "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce by robbery or extortion, or attempts or conspires to do so . . . shall be fined under this title or imprisoned not more than twenty years or both.
     I'll note that while we were off the record Mr. Reed pointed out that the term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or, and I emphasize this last section, under color of official right. . . .
     I think that the point that counsel was making while we were off the record is that Ms. Colvard was in the room [and concurred in the action] when Ms. Paulino telephoned Ms. Gutierrez and indicated that unless she complied with Ms. Paulino's demands, who was . . . using the moniker or name Ms. Williams, that she was going to take certain official action [which would affect Ms. Gutierrez's business], and that that would form the basis of a violation of Section 1951.

. . .

Court: Now, as I have described it, Ms. Colvard, and feel free to correct me if I am in any way misstating anything, is that accurate and do you fully admit to those facts?

6

> Colvard:  I admit to the facts, yes.
>
> Court:  As I have stated them?
>
> Colvard:  As you have stated them.
>
> . . .
>
> Court:  . . . [D]o you wish to change your plea to guilty to Counts II and III of the superseding indictment?
>
> Colvard:  I do.

(Id. at 22:5-30:12).

On January 22, 2015, sixteen days after entering her guilty plea, Colvard filed the instant motion (Doc. 143) to withdraw guilty plea.  Colvard seeks permission to withdraw her plea of guilty to Counts II and III of the second superseding indictment, or, alternatively, she requests the court to "enter an order directing the United States Probation Office to utilize U.S.S.G. § 2B3.3 and the cross-referenced U.S.S.G. § 2C1.1 in calculating the Sentencing Guideline, as necessary to comport with the representations made on behalf of the United States in inducing the plea." (Id. at 9).

**II.   Legal Standard**

Rule 11 of the Federal Rules of Criminal Procedure governs the entry, acceptance, and withdrawal of plea agreements and guilty pleas by criminal defendants.  A defendant who pleads guilty has no absolute right to withdraw his plea after it has been entered.  See United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001).  The defendant may later move to withdraw the guilty plea after the court accepts it, and before the court imposes sentence; in so doing, the defendant

must show a "fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B); see also United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).[1] "A determination of whether to allow a withdrawal of a guilty plea requires consideration of the facts and circumstances in each case." United States v. Artabane, 868 F. Supp. 76, 77 (M.D. Pa. 1994) (citing United States v. Crowley, 529 F.2d 1066, 1071 (3d Cir. 1976)). Such motions to withdraw "should be considered liberally in favor of the defendant," Artabane, 868 F. Supp. at 77 (citing United States v. Young, 424 F.2d 1276, 1279 (3d Cir. 1970)), but shifts in defense strategy, a charge of heart by the defendant, or fears of punishment if the defendant upholds his obligations under a plea agreement are insufficient to warrant withdrawal. See Jones, 336 F.3d at 252; Brown, 250 F.3d at 815.

The court evaluates a motion to withdraw guilty plea in light of the following three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." See United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Jones, 336 F.3d at 252); United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989). The defendant's failure to establish one factor does not necessarily doom the motion to withdraw. See United States v. Wilder, 134 F. App'x 527, 528 (3d Cir. 2005) ("This analysis requires that a district court consider each

---

[1] The decision in Jones and decisions prior to the 2002 Amendments to the Federal Rules of Criminal Procedure invoke the "fair and just reason" analysis pursuant to Rule 32 of the Federal Rules of Criminal Procedure. The substance of this rule regarding withdrawal of guilty pleas was subsequently transferred to Rule 11(d) and (e). See FED. R. CRIM. P. 32 advisory committee notes (2002 Amendments); see also FED. R. CRIM. P. 11 advisory committee notes (2002 Amendments).

factor, but critically, does not make any one [factor] mandatory . . . ." (citing Jones, 336 F.3d at 252-55)). The court must balance the factors and determine whether there is a fair and just reason to grant withdrawal. Id.

### III. Discussion

#### A. Assertion of Innocence

Assertions of innocence must be based upon facts in the record that support a claimed defense. Brown, 250 F.3d at 818. In the instant matter, Colvard contends that she is both legally and factually innocent of the charges brought against her for interference with commerce by threats (Count III). (Doc. 143 ¶ 25). Colvard first asserts that she has a defense of entrapment. (Id. ¶ 24). Colvard further alleges that "grounds for a motion to suppress" exist because the government relies, in part, on evidence obtained through co-conspirator Paulino's "unauthorized re-entering and searching of [Colvard's] private premises." (Id. ¶ 23). Finally, Colvard argues that because she "was not acting as a government official or purporting to have control over [a government official] when she was approached by Gutierrez, . . . . the statutory elements of a Hobbs Act violation are questionable." (Doc. 148 at 16).

Third Circuit precedent makes clear that bald assertions of innocence are insufficient to satisfy this factor. See Jones, 336 F.3d at 252 ("[A]ssertions of innocence . . . must be buttressed by facts in the record that support a claimed defense." (citing Brown, 250 F.3d at 818)); Huff, 873 F.2d at 712. Colvard fails to adduce any substantive evidence in support of her averments. An entrapment defense requires proof that (1) the government induced the crime, and (2) the defendant was not predisposed to engage in the criminal conduct. Mathews v.

9

United States, 485 U.S. 58, 63 (1988); United States v. Lakhani, 480 F.3d 171, 179 n.10 (3d Cir. 2007). Colvard fails to address these elements in her motion. Moreover, Colvard is unable to direct the court to any objective evidence of record to demonstrate that the government in fact carried out an illegal search. See Brown, 250 F.3d at 818. Finally, Colvard's conclusory statement that her admitted actions may not constitute a Hobbs Act violation, standing alone, is inadequate for the purposes of this motion. The court concludes that Colvard's unsubstantiated assertions of innocence do not lend support to her to motion.

### B. Strength of Colvard's Reasons for Withdrawing her Plea

Colvard's asserted reason for withdrawing her guilty plea is that the government wrongfully induced her to plea by proffering false estimates of the applicable sentencing guidelines. (Doc. 143 ¶ 22). As a corollary to this argument, Colvard also avers that her confusion during the change of plea hearing precluded her from knowingly and voluntarily admitting to the facts placed on the record in support of her plea. (Doc. 148 at 15). Before accepting a defendant's guilty plea, a court must make a determination on the record "that the guilty plea was the result of a knowing[] and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." Jamison v. Klem, 544 F.3d 266, 272 (3d Cir. 2008) (citing Boykin v. Alabama, 395 U.S. 238, 243-44 (1969)). Bearing this in mind, the court has carefully reviewed the record—focusing on the transcript of Colvard's change of plea hearing—to evaluate Colvard's claims.

In response to Colvard's assertions, the government avers that "[b]oth the transcript of the change of plea proceeding and the [communications that

precipitated the plea agreement] confirm that there was no agreement about which sentencing guidelines section should be applied." (Doc. 147 at 13). Indeed, during the plea colloquy, the court addressed Colvard on the precise issue of guidelines range estimates. (Doc. 146 at 12:15-13:17). The court stated that if Attorney Reed "or anyone else" had estimated her guidelines sentencing range at that time, and the court subsequently deemed a different range to be appropriate, Colvard would have no basis for withdrawing her plea. (Id. at 13:8-17). The court explained that Colvard could only lodge objections to the probation officer's guidelines calculation. (Id. at 12:15-13:1). Furthermore, the court verified that Colvard had relied exclusively on the terms of the plea agreement in deciding to enter the agreement, and it highlighted the fact that Counts II and III of the second superseding indictment carry a maximum combined sentence of twenty-three years. (Id. at 11:10-16; 12:15-13:2). Colvard responded affirmatively and without hesitation throughout the discourse. Based on Colvard's unequivocal responses during this portion of the plea hearing, the court finds that Colvard understood the government to be bound only by the terms set forth in the plea agreement. As a result, Colvard's contention that the government's preliminary guidelines estimates improperly induced her plea is unavailing.

Colvard further argues that at the plea hearing, she had "difficulty . . . obtaining convergence between what she thought had been agreed to and some of the fact allegations" presented by the government. (Doc. 143 ¶ 18). She notes that "[a] review of the colloquy reveals numerous instances where [she] appeared

somewhat confused and attempted but was not able to fully explain herself." (Doc. 148 at 15). On this point, the court agrees with Colvard.

The colloquy regarding the facts of record lends significant support to Colvard's assertions. Reproduced in pertinent part *supra*, the transcript reveals Colvard's unmistakable hesitancy with respect to her admissions of fact. (Doc. 146 at 22:5-30:12). Colvard was initially unwilling to corroborate certain of the government's factual allegations which form the essential elements of Counts II and III of the second superseding indictment. (Id.) For example, Colvard maintained throughout the proceeding that she harbored no intent to intimidate Gutierrez or to threaten Gutierrez's business. (Id. at 26:10-24). It was only after extensive discussion off the record, wherein the court and counsel identified certain factual admissions that would minimally satisfy the elements of the charges brought against Colvard, that she agreed to the court's restatement of the facts. (Id. at 28:1-30:3). See generally Young, 424 F.2d at 1280 ("[Because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)); United States v. Ballard, No. CRIM.A.03-810, 2005 WL 1690826, at *4-5 (E.D. Pa. July 18, 2005) ("[A] court has the discretion to determine that defendant's plea was not knowing and voluntary where circumstances suggest that a defendant did not intend to plead guilty to a charge.").

When a defendant complains of confusion during the change of plea hearing, courts typically consider "[t]he amount of time which has passed between the plea

and the motion." Artabane, 868 F. Supp. at 78 (citing United States v. Nahodil, 776 F. Supp. 991, 995 (M.D. Pa. 1991) aff'd, 972 F.2d 1334 (3d Cir. 1992)); see also United States v. Morris, No. CRIM.A.98-133, 1999 WL 675470, at *7 n.13 (E.D. Pa. Aug. 31, 1999) aff'd, 230 F.3d 1349 (3d Cir. 2000). In United States v. Artabane, this court noted that "[a] swift change of heart is itself a strong indication that the plea was entered in haste and confusion." 868 F. Supp. at 78 (quoting Nahodil, 776 F. Supp. at 995). The court finds that Colvard's arguments are compelling for the following reasons: (1) Colvard immediately demonstrated her desire to withdraw her plea by filing the instant motion a mere sixteen days after the change of plea hearing; (2) Colvard plausibly asserts that she was confused by the nuances of the discourse during the proceedings; and (3) Colvard's hesitancy during the latter portion of the hearing is obvious to the court, both from its observations therein and from its review of the transcript.

After careful consideration of the change of plea proceeding, and of the averments in Colvard's timely motion to withdraw, the court cannot say that Colvard's guilty plea was "the result of a knowing[] and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." Jamison, 544 F.3d at 272 (citing Boykin, 395 U.S. at 243-44). Therefore, the court concludes that this factor militates strongly in favor of allowing Colvard to withdraw her guilty plea. See United States v. Garba, 285 F. Supp. 2d 504, 510 (D.N.J. 2003) aff'd, 128 F. App'x 855 (3d Cir. 2005) ("If any of [the] reasons for withdrawal are sufficiently weighty, the Court may . . . grant [the] motion." (citing United States v. Stayton, 408 F.2d 559, 561 n.5 (3d Cir. 1969)).

  **C.**  **Prejudice to the Government**

Lastly, the court must consider whether "any prejudice to the government [would be] caused by [Colvard's] withdrawal." Jones, 336 F.3d at 252. Courts have found such prejudice under a variety of factual circumstances, including: the significant passage of time between the defendant's guilty plea and his or her subsequent motion to withdraw; the progression of the case to trial prior to the defendant's guilty plea; and the later unavailability of key witnesses. See, e.g., Crowley, 529 F.2d at 1072 (finding prejudice to the prosecution "through defendant's entering the plea on the day of trial . . . when jurors, witnesses and court personnel had been assembled"); United States v. Tulu, 535 F. Supp. 2d 492, 505 (D.N.J. 2008) (holding that a motion to withdraw filed two years after defendant's guilty plea prejudiced the government's case); United States v. Shusterman, 459 F. Supp. 2d 357, 367-68 (E.D. Pa. 2006) aff'd, 258 F. App'x 403 (3d Cir. 2007) (finding overwhelming prejudice when defendant moved to withdraw his plea which was entered after thirty-five witnesses had testified over twelve days of trial); Nahodil, 776 F. Supp. at 995-96 (denying defendant's otherwise "fair and reasonable" motion to withdraw guilty plea because of the death of a key government witness); cf. Artabane, 868 F. Supp. at 79 (noting minimal prejudice when "witnesses are for the most part local and readily available").

In the matter *sub judice*, the government argues that it will suffer prejudice if Colvard is allowed to withdraw her plea. Specifically, the government avers that "there would be an obvious delay . . . [which] could result in witnesses' memories fading" and that "considerable time and energy have been expended in the

preparation of the plea agreement, approval memorandums and statement of facts to probation based on the guilty plea and conducting the change of plea hearing." (Doc. 147 at 16). The court credits these assertions. Nonetheless, it finds that the withdrawal of Colvard's guilty plea will not impair the prosecution's case. As discussed *supra*, Colvard filed the instant motion less than one month after the court entered her guilty plea. Furthermore, the entirety of the government's efforts to investigate and prosecute the case, which did not proceed to trial, took place within the last two years. All criminal acts alleged by the government transpired locally. Given the posture, timeline, and venue of Colvard's case, the court concludes that the government will not be prejudiced by the withdrawal of Colvard's guilty plea.

## IV.  Conclusion

Upon consideration of the appropriate factors, the court concludes that Colvard has demonstrated fair and just reasons for the withdrawal of her guilty plea. FED. R. CRIM. P. 11(d)(2)(B); see also Jones, 336 F.3d at 252; Garba, 285 F. Supp. 2d at 510. Accordingly, Colvard's motion (Doc. 143) to withdraw guilty plea will be granted. An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      February 18, 2015